Ms. Meisner, good morning. Good morning, Your Honors. Judith Meisner, representing the appellant Samuel Dixon. I'd like to address the warrant that was issued in this case. The warrant requirement is intended to have the search decision made by the neutral judicial officer, not by the law enforcement officer who is involved in the investigation. And this court and the Supreme Court and other courts have recognized that for the judicial officer to make that determination, the judge needs facts, not simply law enforcement conclusions. I think Brunette, although a child porn case, is a good illustration of that principle. And search cases, as this court has repeatedly said, are also very fact-specific. And you need to assess the adequacy of the facts of the particular case to determine whether they establish a fair probability that the items to be seized will be found in the place to be searched at the time of the search. This is a warrant based on information from a confidential informant. We need to determine from the totality of the circumstances whether the informant is credible and his information is reliable. This court has set out in various cases factors to consider, none of which are indispensable, and factors where a stronger showing on one or more may compensate for weaker or deficient factors, evidence on another factor. We start with the probable veracity or basis of knowledge of the person supplying the hearsay. Assertion of reliability alone is of slight weight. Telling a judge that this informant, this person is reliable doesn't really give the judge a basis for... He did more than that. He said he had used them before in other prosecutions. Did he not? Well, he said that the informant had provided information in the past which had led to convictions. Which, again, was a somewhat general statement. Does not allow the court to assess how many. Didn't tell the court whether or not all of his prior information had been reliable. Was it... Had he provided false information in the past or bad information in the past? It's a general assertion, yes, and gets some weight. So it's not... I'm not suggesting that it was simply a, oh, he's reliable, and you can just take my word for it. Well, in fact, there were three controlled drug buys based on his information, which does tend to reinforce his reliability. Yes, the three controlled buys do provide some corroboration, but let's... Looking at those controlled buys, there again is a vagueness on detail. There are... There's a lot of information, but there are no dates. There is... No, but there are approximate time periods, and there was an explanation of the reason not to give specific dates. Last few months, last couple of months, last 96 hours. And the reasons given, he says, we need to protect the identity of the informant to protect his safety. But the safety protection rationale was not supported by any statement that there was actually a fear of safety to the informant in this case. It was in my... What he had said was, what the... It said was that, I've used this person before. So, obviously, this was not a... This was not a one-off. And so, the reasonable inference is that he was attempting to protect him on other investigations, which might be ongoing or might be in the future. Actually, I don't believe that he said that he had used this informant before. Let's leave it assuming that. Why isn't that enough? Simple use in the past? Because the question is... No, use in the past plus three controlled drug buys observed by the police. On the first one, they actually observed the transfer of the substance from the defendant's hands to the informant's hands. And no observations of any transfer on the second or third? No, but they do watch him go out from his 12 Lewis Street apartment to the transaction and then come back promptly thereafter. Carrying nothing when he goes out. And interestingly, the affidavit does not say, I believe there's probable cause that I'm going to find drugs in the apartment, which is an interesting omission in terms of nexus. Your brief does a very good job of explaining omissions, of pointing out omissions that the police easily could have added more information, which would have strength in their case. But our focus is not on the omissions, but the statements that were actually made. Yes, but I think you have to evaluate the strength of the statements that are made in light of the totality of the information that could and we say should have been provided here. For an officer, Officer Ross described his training and experience as he went to the academy and in terms of drug identification, he took a DEA course in 1999 that included a course on drug identification. I agree that had there been some field testing or later testing of the prior drug transactions, that would have been helpful. It would have assisted the government so that it wasn't just relying on his, I know a drug transaction when I see one. But the omission does not mean that his experience as an officer in handling drug transactions is to be doubted. Didn't he say he had participated in more than 1,000 drug investigations? He did not say how many times he had identified drugs. In fact, he didn't even provide a physical description of the substance he seized. So you're asking the judge who's issuing the warrant to make a determination based on conclusions from the- Well, it's more than conclusions. The drug buys are more than conclusions. They tied it back to the, it was 12 York Street, they tied it back to the house. All of this is in the officer's declaration to the court in seeking the warrant. Why isn't, when you look at the totality of what he said, why isn't that sufficient for probable cause? Well, I'm suggesting that if you look at, that his statements are conclusory and have enough relevant information omitted that the statement that this is, that there was a transaction without any specification, without any indication of the nature of the exchange other than, I believe it to be crack cocaine should be viewed with a little skepticism since he could easily have provided additional information to the court to take it out of the realm of conclusion and put it in the realm of facts that the court could use to make a decision. He had three months to test the substance from the first controlled buy, a couple of months to test the second one, and three or four days to test the last. There's no explanation as to why he didn't take those kind of basic steps. Most of the cases that this court has discussed using confidential informants where there's evidence of controlled buys include the testing of the substance. Carty, Genao, Garcia, Felix, Kuntz, Savant, Barnes all have officers who tested the substances and informed the court of the results of those tests. And a number of cases also include the dates of activity so that the defendant, so the court can review, if it wishes, what has been going on and when. What benefit is gained from the exact date as opposed to those, what was actually provided within the last 96 hours? That would be more of a benefit to the defendant in determining whether or not there is a basis for a challenge to the warrant in terms of looking for a Frank's issue, which was raised below given the number of... You're not raising it on appeal? No, we're not raising that on appeal. Thank you. Ms. Yang, you've already heard me say that Ms. Meisner has done a very good job of pointing out all sorts of little gaps in the information. The failure to identify the car, which is associated with the residence, the failure to do drug testing. So she asks us to draw doubt, if you will, from those sort of basic failures to fill in some of the blanks that would have been of use to the magistrate. Yes, Your Honor. I think that in this case, the warrant affidavit, given the facts and the totality of the facts presented there, do amply support the belief that the defendant had committed a crime and that evidence of that crime would be found at his York Street apartment. In consideration of the factors that this court considers, here we had a confidential informant who was known to the Boston Police Department. He had previously provided reliable information that had led to the arrests and convictions of other individuals for violations of the drug laws. He provided firsthand information of the defendant's criminal activities, stating that the defendant was selling crack cocaine. He gave the officers a description of the defendant's physical appearance, the defendant's car, and the exact phone number that he used to contact the defendant. And he made a self-incriminating statement that he had himself previously purchased drugs from the defendant on prior occasions. And as this court has stated in Greenberg, this type of self-incriminating statement enhances an informant's reliability because it's more likely true because of the risk inherent in making that statement. I wouldn't take that too far. That's the obvious reason the person is a confidential informant, right? There has to be some incentive. So I certainly wouldn't want that to be a dispositive rule in these cases. Absolutely, Your Honor. We're not arguing at all that that's the dispositive factor here. We have corroboration of many facts by law enforcement. They corroborate the defendant's identity. They trace the vehicle registration back to the defendant. And they check the phone number. They get a voicemail message stating that they reached the defendant. And then they corroborate the very underlying... When they observed him on the second and third transactions, did the defendant drive his car to the locations of the transactions? The affidavit... Yes, Your Honor, the affidavit does not state... And yet there's no description of the car that he drove. In connection with the controlled buys, there isn't. The detective does see that the defendant is on many occasions driving a Red Ford Expedition that matches the description provided by the informant. The car is seen parked outside of the York Street apartment at many times during the day and the night. But there's no assertion it's used to get to the location of the second and third deal? No, Your Honor, but I don't believe that that's necessary. There's no requirement... But was it used in the first deal? There's no description of a car used in the first deal either. I think it's likely that the defendant traveled without a car after the phone call was placed by the informant. The affidavit says that he arrived within a few minutes to the controlled buy location. But there's no requirement that the car and the other facts provided by the informant have to all come together at the very instant that a controlled buy occurs. Here we have three controlled buys in which the informant brings back a substance that the detective states in his opinion is crack cocaine. During each of the three controlled buys, the defendant is followed directly back to the York Street apartment after the buys. And during two of the three controlled buys, he's followed directly from the apartment to the controlled buy location. And that gives rise to the claim that the defendant left the apartment with the drugs he sold to the informant and returned to the apartment with the money. And for these reasons, there was ample evidence to believe that evidence of the crime would be found at the York Street apartment. So here's the problem that I have. It starts with the lack of date information. And I take it the explanation is that's to protect the CI. If the CI is one of a number of retail customers, I get it. I understand. But then when you add on to that that there's no field testing or other testing of the materials, then I begin to wonder if maybe it wasn't just sloppiness. So how do you respond to that? The detective, as you mentioned, does make this statement that he's trying to protect this informant. This court has explicitly found probable cause in affidavits in which there hasn't been sort of an exact description of the controlled by date when there's been withholding of information on the quantity and the amount of drugs involved, stating that this is, and the court has said, this is a common police practice to protect. Not to do field testing? What does that have to do with protecting the informant? Your Honor, I think there are many different ways that these police investigations can be undertaken. Field testing is certainly one of these ways. The detective here, as you mentioned, has made a case on the detection. What happened to the drugs from, I guess it was the first controlled by? There were drugs that were obtained in each of the three controlled by's. All right. And what happened to them? Actually, at the evidentiary hearing on the second motion to suppress, Detective Ross testified that he had actually sent those substances to the lab to be tested, but that the results had not come back in time by the time he applied for the warrant, David, for the warrant application. So it wasn't that there was no attempt to do any testing. The results were simply not back in time. I think there are other facts beyond Detective Ross's opinion here that support that the substances were drugs. We have a confidential informant who stated he previously purchased drugs from the defendant. He's likely familiar with what crack cocaine looks like, and I think it's unlikely that on three separate occasions he wouldn't recognize if the fact that there's a prior history between the informant and the defendant I think also probably suggests that the defendant wouldn't have sold him some counterfeit substance. Can you tell me why, if the police were not so concerned about safety when they say it was within, the last by was within the last 96 hours, why there couldn't have been at least some more detail in terms of the time period for the first two by's? Your Honor, I'm not sure why there was not, other than that I believe that additional detail may have compromised or jeopardized the informant's safety and confidentiality. I don't understand how that could possibly be so, given the identification of a number of hours for the most recent one. You mean with respect to the dates of the first and second control by's? Yes. There's no information in this affidavit about whether the informant was the only person, for instance, that was purchasing drugs from the defendant, if that had been the case. No, I understand that, but they I mean, I guess the reason could be because then they expected to make an arrest and they didn't have to worry about it so much, but then that would also apply to the previous ones too. It just seems, you know, the 96 hours, although not exquisitely detailed, is pretty detailed in terms of putting his safety at risk. I don't know why there couldn't have been more detail in terms of the first couple. Your Honor, there could have been more detail, but I believe that given all the facts presented in the affidavit that there is ample evidence for both probable cause of search of the defendant and the 12 York Street apartment. If there are no further questions, we'll move on. Yeah, what's the relationship between the U.S. Attorney's Office and the Boston Police Department on training as to adequacy of affidavits? Is there any? Your Honor, unfortunately I'm not familiar with that, but I'd be happy to file a supplemental letter if you'd like. No, that's alright. Alright, thank you. Just a pragmatic